# UNITED DICTIONARY COMPANY *v.* G. & C. MERRIAM COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 129. Argued January 23, 1908.—Decided February 3, 1908.

The requirement of the Copyright Act of June 18, 1874, c. 301, § 1, 18 Stat. 78 (Rev. Stat. § 4962), that notice shall be inserted in the several copies of every edition, does not extend to publications abroad and sold only for use there.

THE facts are stated in the opinion.

*Mr. George P. Fisher, Jr., Mr. James H. Peirce* and *Mr. William Henry Dennis,* for appellant, submitted:

The copyright statute requires the insertion of the copyright notice in editions of a book published abroad by and with the consent of the owner of the American copyright on such book. Rev. Stat. § 4962; *Callaghan* v. *Myers,* 128 U. S. 617 (652); *Thompson* v. *Hubbard,* 131 U. S. 123, and cases there cited. As § 4962 contains no language excepting from its provisions books published in foreign countries, or copyrighted articles manufactured abroad, it applies to all books or like copyrighted articles regardless of the country in which they may be published or made. This is plain when that section is read in connection with other sections of the same act.

Section 4956 of the Revised Statutes specifically provides "that no person shall be entitled to a copyright unless he shall on or before the day of publication in this or any foreign country, deliver to the office of the Librarian of Congress" a printed copy of the title of his book; and the same section further provides as a prerequisite to a valid copyright, that he

shall deliver to the Librarian of Congress two copies of the book "not later than the day of publication thereof in this or any foreign country." The statute thus makes plain the fact that the author may publish his book either here or abroad. See Drone on Copyright, 295, 577; *Boucicault* v. *Wood*, Fed. Cas. No. 1,693; *The "Mikado" Case*, 25 Fed. Rep. 183; *Gandy* v. *Belting Co.*, 143 U. S. 592; Curtis on Patents, par. 98.

By leave of court *Mr. George W. Ogilvie*, President of the United Dictionary Company, filed a brief in behalf of appellant.

*Mr. William B. Hale*, with whom *Mr. Charles N. Judson*, *Mr. Frank F. Reed* and *Mr. Edward S. Rogers* were on the brief, for appellee:

Appellee's copyright is not invalidated by the failure to insert the notice of the American copyright in the books published in England, but not imported by, or with the consent of appellee into the United States, because the statute has no extra-territorial operation, and therefore does not require such notice to be inserted in such foreign books.

The rule that statutes of a State or Nation have no extra-territorial operation has been applied to the Patent Act which is *in pari materia* with the Copyright Act. *The Apollon*, 9 Wheat. 370; *Bond* v. *Jay*, 7 Cranch, 350; *Brown* v. *Duchesne*, 19 How. 183; *Gandy* v. *Belting Co.*, 143 U. S. 592; *Chase* v. *Fillebrown*, 58 Fed. Rep. 377; *American Sulphite Pulp Co.* v. *Howland Falls Pulp Co.*, 70 Fed. Rep. 986, 992; *Tabor* v. *Commercial National Bank* (C. C. A.), 62 Fed. Rep. 383; *The State of Maine*, 22 Fed. Rep. 734; *Colquohoun* v. *Heddon*, L. R. 25 Q. B. D. 129, 134; *Warren* v. *First National Bank*, 149 Illinois, 9, 25; *Johnson* v. *Mutual Life Ins. Co.*, 180 Massachusetts, 407; *S. C.*, 62 N. E. Rep. 733; *Attorney General* v. *Netherlands Fire Ins. Co.*, 181 Massachusetts, 522; *S. C.*, 63 N. E. Rep. 950; *Carnahan* v. *Western Union Telegraph Co.*, 89 Indiana, 526.

The object of requiring notice is not subserved by insertion in foreign books. *Sarony* v. *Burrow-Giles Co.*, 17 Fed. Rep. 591; *S. C.*, 111 U. S. 53; *Snow* v. *Mast*, 65 Fed. Rep. 995; *American Press Assn.* v. *Daily Story Pub. Co.*, 120 Fed. Rep. 766.

The form of the prescribed notice shows that it was not intended to be inserted in foreign books. Rev. Stat. § 4962; Trade-mark Act of Feb. 20, 1905, § 28.

The owner of the copyright cannot control the foreign publication and should not be penalized for consenting to what he cannot prevent. No statute will be construed to work hardship, injustice, or inequality. *Thompson* v. *Hubbard*, 131 U. S. 123; *American Press Assn.* v. *Daily Story Pub. Co.*, 120 Fed. Rep. 766; *Harper* v. *Donohue & Ogilvie*, 144 Fed. Rep. 491; *Hepburn* v. *Griswold*, 8 Wall. 607; *Lionberger* v. *Rause*, 9 Wall. 475; *Davis* v. *Bohle*, 92 Fed. Rep. 328; *United States* v. *Crawford*, 47 Fed. Rep. 561. See also *Dwight* v. *Appleton*, 8 Fed. Cas. No. 4,215; *Haggard* v. *Waverly Pub. Co.*, 144 Fed. Rep. 490; *Pierce & Bushnell Co.* v. *Werckmeister*, 77 Fed. Rep. 54; *American Tobacco Co.* v. *Werckmeister*, 146 Fed. Rep. 375; *American Tobacco Co.* v. *Werckmeister*, 207 U. S. 284; *Boucicault* v. *Wood*, Fed. Cas. No. 1,693.

Importation into the United States of copyright matter without consent of the owner of the American copyright, is and always has been prohibited. Rev. Stat. § 3061 and §§ 4964, 4956, as amended.

Sections 4964 and 4965 are penal statutes. *McDonald* v. *Hearst*, 95 Fed. Rep. 656; *Schriver* v. *Sharpless*, 6 Fed. Rep. 175, 179; *S. C.*, 110 U. S. 76; *Taylor* v. *Gilman*, 24 Fed. Rep. 634; *Wheeler* v. *Cobby*, 70 Fed. Rep. 487.

What is made penal is prohibited. *Opinion Attorney General Knox*, 23 Op. A. G. 445; and as to double prohibition of importation, see §§ 4964–4965, Rev. Stat.

The importation of the book by appellant was illegal because made for the purpose of reproduction and sale of such reproduction, and hence not authorized by the exception in

the statute which permits importation of not more than two copies of a book at any one time "for use and not for sale." Treasury Decision, No. 16,046; *Opinion Solicitor-General Conrad,* 21 Op. A. G. 159.

By leave of court, *Mr. Stephen H. Olin* filed a brief herein as *amicus curiæ* on behalf of the American Copyright League supporting the contention of defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the appellee to restrain the infringement of copyright in a book entitled "Webster's High School Dictionary." The appellee, a Massachusetts corporation, took out copyrights at the same time in England and here. It published and sold the book in this country with the statutory notice of copyright, and made a contract with English publishers, under which it furnished them with electrotype plates of the work, and they published it in England, omitting notice of the American copyright. The English work has a different title, ."Webster's Brief International Dictionary," and has some other differences on the first three and last thirty-four pages, but otherwise is the same. The appellant, an Illinois corporation, sent for the English book with intent to reprint it, and was about to publish it when restrained. The English publishers agreed not to import any copies of their work into this country, and also to use all reasonable means to prevent an importation by others, so that the appellee cannot be said to have assented to the appellant's act. So far as appears, the only copies that have been brought over are the one above mentioned and another, purchased for use but not for sale, by the president and manager of the appellant. The question is whether the omission of notice of the American copyright from the English publication, with the assent of the appellee, destroyed its rights, or, in other words, whether the requirement of the act of June 18, 1874, c. 301, § 1, 18 Stat. 78 (Rev. Stat. § 4962), that notice shall be in-

serted "in the several copies of every edition published." extends to publications abroad. The Circuit Court sustained the defendant's contention and dismissed the bill. 140 Fed. Rep. 768. The Circuit Court of Appeals reversed this decision, 146 Fed. Rep. 354; S. C., 76 C. C. A. 470, and the case is brought to this court by appeal.

Notwithstanding the elaborateness of the arguments addressed to us and the difference of opinion in the courts below, there is not a great deal to be said, and the answer seems to us plain. Of course, Congress could attach what conditions it saw fit to its grant, but it is unlikely that it would make requirements of personal action beyond the sphere of its control. Especially is it unlikely that it would require a warning to the public against the infraction of a law beyond the jurisdiction where that law was in force. The reasons for doing so have not grown less, yet in the late statute giving copyright for foreign publications the notice is necessary only in "all copies of such books sold or distributed in the United States." Act of March 3, 1905, c. 1432, 33 Stat. 1000, amending Rev. Stat. § 4952. So it is decided that the section punishing a false notice, which naturally would be coextensive with the requirement of notice, did not extend to false statements affixed abroad. *McLoughlin* v. *Raphael Tuck Co.*, 191 U. S. 267. The same conclusion would follow from the form prescribed for the notice, which would be inapt in foreign lands.

It is said that the act of 1905 cannot affect the construction of the law under which the parties' rights were fixed, and it cannot, beyond illustrating a policy that has not changed. But the age of the condition affords another reason for confining it as the later condition is confined. When it first was attached, in 1802, there was little ground to anticipate the publication of American works abroad. As, late as 1820 Sydney Smith, in the Edinburgh Review, made his famous exclamation, "In the four quarters of the globe, who reads an American book?" If, however, there was a publication abroad, importation without the consent of the owner was

forbidden in general terms, a fact giving another reason for the narrower construction of § 4962. If that was the true construction once, it is the construction still. Again, when the present act was passed, there was no foreign copyright for an American author, and Congress knew and he knew, as he knows now, if he contents himself with home protection, that his work might be reprinted without notice of any sort. Such reprints rather inconsistently are called piracies in argument. But whatever the moral aspects may be, the piracy is a legal right, and as such its exercise must be contemplated by the author. It does not matter whether he does so with regret at the loss of money or with joy at the prospect of fame, and it is difficult to see any greater difference between giving consent to the foreign publication and intentionally creating the opportunity, the inducement and the right. But it hardly would be argued that because no copyright had been taken out in England and therefore the reprint there was lawful, an American copyright could be defeated by importing the English book and reprinting from that. *Thompson* v. *Hubbard*, 131 U. S. 123, 150. It would be even bolder to say that the American author would have stood worse if in the days before he could get a copyright in England he had made an arrangement with English publishers to secure some payment from them. Yet that is the logic of the appellant's case.

If a publication without notice of an American copyright did not affect the copyright before the days when it was possible to get an English copyright also, it is not to be supposed that Congress, by arranging with England for that possibility, gave a new meaning to the old § 4962, increasing the burden of American authors, and attempted to intrude its requirements into any notice that might be provided by the English law. The words of the section remained unchanged, notwithstanding the grant of a limited liberty of importation, while other sections were amended where there was reason for a change.

It may be that in most cases the importation of a pirated English copy of an American book would be unlawful, whereas

it is argued that the importation was lawful in the case at bar. The appellee makes a strong argument that the appellant's importation was wrong. But it is hard to see how the right to copy a book, whether lawfully or unlawfully imported, can be affected by the mode in which it got here. The analogies of the law are the other way. A person is subject to the jurisdiction, even if he was brought there by wrong. *Pettibone* v. *Nichols*, 203 U. S. 192. A document is admissible in evidence, although it was improperly obtained. *Commonwealth* v. *Tucker*, 189 Massachusetts, 457, 470; 3 Wigmore, Evidence, § 2183. The argument for the appellant dwells somewhat fancifully on the possibilities of innocence being led astray. All those possibilities might exist if a pirated volume should be smuggled into the United States. Moreover the appellant argues, with the support of the opinion of an Attorney General and a Solicitor General, that under § 4956 and its amendments two copies of an unauthorized edition lawfully might be imported for use. 21 Op. Atty. Gen. 159, 162. The statutes cannot be expected to do more than to secure the author and the public so far as is reasonably practicable. The obvious plan is not to be distorted by the chance that ingenuity may find some way to slip through the law uncaught.

As we are satisfied that the statute does not require notice of the American copyright on books published abroad and sold only for use there, we agree with the parties that it is unnecessary to discuss nice questions as to when a foreign reprint may or may not be imported into the United States under the present provisions of our law.

*Decree affirmed.*