**COLONIAL BOOK CO., Inc., v. AMSCO SCHOOL PUBLICATIONS, Inc.**

District Court, S. D. New York.

Sept. 9, 1941.

Morris Kirschstein, of New York City, for plaintiff.

Philip Wittenberg, of New York City, for defendant.

NEVIN, District Judge (sitting by designation).

This is an action under the copyright laws of the United States. U.S.C.A., Title 17, § 1 et seq. Plaintiff is the owner of the copyright to a book entitled "Mastery Units In Chemistry". In addition to the text, the book contains numerous illustrations or diagrams.

Defendant publishes a book entitled "Chemistry". It also contains illustrations or diagrams. Originally (in its complaint filed December 2, 1939) plaintiff charged that the book of defendant infringed its copyright but later, by stipulation (filed February 5, 1940), it stated that it would rely only on certain pages (set forth in the stipulation) "as being infringements," and still later (in open court at the trial) certain of these pages were withdrawn from consideration. There are left, therefore, eleven pages in defendant's book (on all of which there are drawings or diagrams) as to which plaintiff now claims infringement. These pages are specifically set forth in the findings of fact herein.

Originally, too, in its complaint (Par. 16) plaintiff charged unfair competition on the part of defendant. This claim was not pressed, however, either upon the trial or in the briefs and is no longer considered as in the case.

---

[14] See 6 Wigmore on Evidence, 3d Ed. 1940, §§ 1767–1769.

Residence of the parties, jurisdiction of the court, ownership of the copyright by plaintiff, and publication and sale by defendant of its book, including the alleged infringing pages, are all admitted. The only issue, therefore, before the court is that of infringement.

As to the illustrations or diagrams contained in its own book (Ex. 2) plaintiff submits that "in chemistry, one of the branches of the subject specially stressed and required by the Board of Regents is the laboratory preparation of certain chemical elements and compounds. The pupil is required to know the apparatus employed, the chemicals used (both by name and chemical formula), and the so-called 'equations of reaction' which govern the chemical actions that take place which result in the production of the particular element or compound. It is only the portion of plaintiff's book relating to this phase of the subject which is relied on, namely the diagrams on the pages of plaintiff's book hereinafter more specifically enumerated. With this phase of the subject, text books and review books on chemistry had treated in more or less stereotyped fashion. * * * The authors of plaintiff's book sought to present this particular phase of the subject of chemistry in a novel and pedagogically effective manner. The diagram of the apparatus and the substances employed are all associated together in a striking, integrated unit, which catches the eye and holds the pupil's attention and impresses itself upon his mind. The diagram tells the whole story—everything that the teacher needs to teach the pupil—in a vivid, composite unit which picturizes the whole procedure and becomes fixed in the pupil's mind. * * * The editors of plaintiff's book have themselves best described these diagrams and their effectiveness in the Preface (vi), in the following language: 'Abundant, Clear Diagrams. Diagrams are an attempt to put action into forms and shapes—to enable students to see that something is actually taking place in chemical processes. The diagrams used in this book are not only clearly labeled but are dramatic as well. In this way, there is an appeal to the imagination that more firmly fixes a method of preparation or process in the mind of the pupil. In line with the functional treatment characterizing this study-text, the equations for each process are definitely tied in with the diagram—thus enhancing the teaching value of the drawings.

Every fundamental laboratory procedure or industrial preparation is illustrated. Functional Ideographs. Selected and included on the basis of teaching utility only, these new-type idea-illustrations have four main purposes: (1) to attract attention and thus encourage an abiding interest, (2) to explain by visual portrayal, (3) to act as focal points around which the student can rally associated facts and ideas, and (4) to correlate important concepts.' The value of plaintiff's diagrams is fully attested to by the record."

Plaintiff urges that there was direct copying of its diagrams by defendant and that this is positively evidenced by the fact that certain errors that appear in certain of its diagrams likewise appear in the corresponding diagram of defendant, as for example the diagram on page 110 of plaintiff's book (Ex. 2), in which plaintiff asserts there are certain errors, and on page 56 of defendant's book (Ex. 3), in which (as plaintiff states) the identical errors appear.

In addition and in this connection, plaintiff points out, too (and the proof supports its assertion) that its diagram (Ex. 2, P. 110) is incorrectly labeled, that it (plaintiff) has labeled it "Laboratory Preparation of Sulphuric Acid by Contact Process" and that defendant has labeled its (defendant's) diagram (Ex. 3, P. 56) "Laboratory Preparation of Sulfuric Acid" whereas in truth and in fact the diagram (neither one) does not represent a laboratory preparation at all, it is not an experiment performed by the student in the laboratory, it is a demonstration performed only by teachers. As to this, the record (S.M. pp. 130, 131) shows:

"Q. (Mr. Kirschstein, counsel for plaintiff) In the defendant's book on page 56, where this diagram for the contact process for sulfuric acid appears, there appears underneath the diagram the statement, 'Laboratory preparation of sulfuric acid.' Is that a correct statement? A. (Witness Mr. Cohen) Laboratory preparation of sulfuric acid?

"Q. Yes. A. It is absolutely incorrect.

"Q. And on page 110 of the plaintiff's book, underneath that diagram, what legend appears? A. Laboratory preparation of sulfuric acid by contact process. Laboratory preparation of sulfuric acid is absolutely incorrect.

"Q. They are both incorrect? A. Absolutely. * * * But as a laboratory ex-

158

periment, no student has that apparatus in the laboratory and works it. At best it is only a demonstration."

■ The record (S.M. pp. 87, 88, 126, 129) further shows that the apparatus as shown on both diagrams (of plaintiff and defendant, respectively) "won't work" as an "operative apparatus." No testimony to the contrary as to any of these matters was offered on behalf of defendant. The testimony of plaintiffs' witnesses stands uncontradicted and unimpeached. One of the most significant evidences of infringement is the identity of errors. Callaghan v. Myers, 128 U.S. 617, 662, 9 S.Ct. 177, 32 L. Ed. 547.

That defendant had access to plaintiff's book shortly after it was published in the Fall of 1936 is not denied (S.M. pp. 102, 103). Defendant, however, does deny infringement. It claims it made its own drawings; that the drawings used by both plaintiff and defendant are substantially the same as those that had theretofore appeared in standard works used in New York City, and that prior drawings anticipated those of both of the parties hereto. Defendant further urges that the only similarity (between the drawings of the respective parties) is the use of the reverse cut and that the idea of using the reverse cut in a chemistry book was not copyrightable and it points out what it claims are individual differences in the respective diagrams.

As to all of this, plaintiff replies that it is not seeking "the exclusive right to the idea of using the reverse cut. That is not the issue here" that "it is the composite whole and not any particular portion of any diagram that is claimed to be protected by the copyright, and it is the composite whole that the defendant has in each instance appropriated."

Numerous authorities are cited and some quoted from, in their briefs, by counsel for the respective parties in support of their claims. However, no useful purpose would be served in repeating or dwelling upon them here in view of the controlling decision recently announced (May 19, 1941, 119 F.2d 874) by the Court of Appeals of this (Second) Circuit in the case of College Entrance Book Co., Inc., v. Amsco Book Co., Inc., later herein referred to.

In this connection, however, one further claim upon the part of defendant, properly, should be noted. As already indicated, defendant proffered no oral testimony. Certain documentary evidence was offered in its behalf and admitted. The documents are defendants' Exhibits A to K inclusive.

As shown by the record (S.M. pp. 173, 174) the following transpired at the close of plaintiff's case:

"Mr. Kirschstein: That is the plaintiff's case.

"Mr. Wittenberg (Counsel for defendant): Defendant rests.

"The Court: The defendant rests?

"Mr. Wittenberg: Yes, sir. And, if your Honor please, I am going to renew my motion at this time—to dismiss.

"The Court: As I understand it now, this is a final submission of the case on the evidence as introduced by the plaintiff on the theory, at least one theory, I presume, that the plaintiff has failed to make out a case under the law.

"Mr. Wittenberg: Entirely so, your Honor."

The record (S. M. pp. 3, 4) further shows the following at the outset of the case: "Mr. Wittenberg: In view of the withdrawals that have just been made, the number of drawings left in the case, out of a 254-page book, are insignificant. * * * at this point I think I am going to move to dismiss the complaint, more or less standing on his stipulation of withdrawal plus the matter I offered your Honor on the opening."

As appears of record, the court reserved decision on defendant's motion just referred to (made at the start of the trial) until it passed on the case finally. That motion is here and now overruled as is also defendant's motion to dismiss made or renewed (as above recited) at the close of plaintiff's case.

■ The court has reached the conclusion that defendant infringes plaintiff's copyright covering the diagrams on the pages of plaintiff's book (Exhibit 2 herein) specifically referred to in the findings of fact made a part hereof and the fact that plaintiff now relies upon and charges infringement as to diagrams on eleven pages only, does not in and of itself, prevent it from securing, or warrant the court in denying, the relief it prays for, limited to the eleven infringing diagrams or pages. Da Prato Statuary Co. v. Giuliani Statuary Co., C.C., 189 F. 90, 93; Henry Holt & Co. v. Liggett & Myers Tobacco Co., D.C., 23 F.Supp. 302, 303; Kaeser & Blair v. Merchants' Ass'n, 6 Cir., 64 F.2d 575.

The case of Perris v. Hexamer, 99 U.S. 674, 25 L.Ed. 308, upon which defendant places great emphasis, and other cases cited and relied upon by defendant, are readily distinguishable from the instant case and are not in conflict with the views of the court as here expressed.

But, at any event, the claims urged by defendant have been decided adversely to it by the Court of Appeals of this Circuit in its recent decision in the College Entrance Book Co., Inc., case, above referred to. There the court said (119 F.2d at pages 874, 875), inter alia: (1) "We think, however, that Beller's lists themselves are unimpeachable evidence that Beller [1] made them up from the lists in plaintiff's books. * * * But the fact that 7 French words of extremely common use, included in the syllabi, but inadvertently omitted from plaintiff's lists, were also omitted from Beller's first edition is hardly explicable except on the supposition that Beller resorted directly to plaintiff's lists * * *." (This is applicable to defendant's copying of plaintiff's errors in the instant case) and (2) (119 F.2d at page 876) "Although the word lists constitute only a small proportion—less than 15 per cent—of the printed matter included in the present editions of both parties' publications, it is evident that they are of real importance (defendant's original edition comprised only a word list and sample examinations), and entitled to copyright protection. Oxford Book Co. v. College Entrance Book Co., 2 Cir., 98 F.2d 688 (cartoons in a school history text); King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533 (one character of a cartoon strip)."

In the instant case the court has reached exactly the same conclusion (as to the 11 diagrams complained of) as did the Court of Appeals in the College Book case, and it cannot express that conclusion in clearer or more succinct language than by here adopting as its own the language there used (119 F.2d at page 876), as follows: "Both plaintiff's and defendant's books met exactly the same demand on the same market, and defendant's copying was unquestionably to avoid the trouble or expense of independent work. This is an unfair use. West Pub. Co. v. Lawyers' Co-operative Pub. Co., 2 Cir., 79 F. 756, 35 L.R.A. 400; see Lawrence v. Dana, Fed. Cas. No. 8,136. There is nothing to the contrary in Oxford Book Co. v. College Entrance Book Co., supra, * * *."

Upon a consideration of the whole of the record, the briefs and arguments of counsel, and the applicable law, the court has arrived at the following:

### Findings of Fact.

1. This is a suit for infringement under the copyright laws of the United States.

2. Plaintiff, Colonial Book Company, Inc., is a New York corporation, having its place of business in the Borough of Manhattan, City and State of New York. Defendant, Amsco School Publications, Inc., is a New York corporation, having its place of business in the Borough of Manhattan, City and State of New York, within the Southern District of New York.

3. Plaintiff and defendant are both publishers of text books including review books of the various subjects taught in high schools.

4. Plaintiff is the owner of the copyright in and to a book entitled "Mastery Units In Chemistry", annexed to the bill of complaint and identified as "Plaintiff's Exhibit 2", and hereinafter referred to as "plaintiff's book".

5. Infringement is charged by the printing, publication and sale by defendant of a book entitled "Chemistry", annexed to the bill of complaint and identified as "Plaintiff's Exhibit 3", and hereinafter referred to as "defendant's book".

6. The procuring of the copyright and due compliance with the requirements of the Statute is admitted. The Certificate of Registration is in evidence as "Plaintiff's Exhibit 1".

7. Plaintiff's book comprises both text and diagrams. No copying is charged of plaintiff's text. The charge of infringement is limited to the copying of certain diagrams appearing in plaintiff's book, and the following are the pages of plain-

---

[1] This is the same Beller (Mr. Albert Beller) to whom Mr. Gentilini, editor of plaintiff (herein) company, gave a copy of plaintiff's book "In the Fall of 1936, shortly after the book came out" (S. M. P. 102). (This note is supplied by the court in the instant case and does not, of course, appear in the decision of the Court of Appeals).

tiff's book and the corresponding pages in defendant's book claimed to infringe:

| Plaintiff's Book | Defendant's Book |
|---|---|
| 7 | 47 |
| 15 | 48 |
| 88 | 52 |
| 91 | 60 |
| 95 | 53 |
| 106 | 54 |
| 107 | 55 |
| 110 | 56 |
| 125 | 58 |
| 129 | 59 |
| 137 | 62 |

8. In New York State the material to be covered in secondary schools is contained in a syllabus issued by the Board of Regents of the University of the State of New York, and high school students are required to pass examinations given by this Board. Both plaintiff's and defendant's books are review books of chemistry, and are intended to aid the student in reviewing the subject and in preparing for the examinations. The branch of the subject specially stressed and required by the Board of Regents and prescribed in such syllabus is the laboratory preparation of certain chemical elements and their compounds. The pupil is required specially to know the apparatus employed, the chemicals used (both by name and chemical formula) and the so-called "equations of reaction" expressing the chemical actions that take place.

9. Prior to the publication of plaintiff's book, text books and review books on chemistry treated with this phase of the subject in more or less stereotyped fashion. The substances used were given in the text together with an explanation of the chemical action and the equation of reaction, the latter being part of the text in no particular type or manner of display. Also, a diagram of the apparatus was given with a reference to it in the text in the usual way, as by the legend "(See Fig.—)". This diagram might appear on the same page with the pertinent portion of the text, or on the next page, wholly removed or separate from the equation of reaction.

10. In plaintiff's book the authors sought to present this phase of the subject in an original and pedagogically more effective manner. In particular, they provided in connection with the laboratory preparation of oxygen, hydrogen, chlorine, bromine, hydrochloric acid, hydrogen sulphide, sulphur dioxide, sulphuric acid, ammonia gas, nitric acid, and carbon dioxide the diagrams which appear on the pages above listed of plaintiff's book, and in which the apparatus, the substances employed, and the equation of reaction are all associated together in a striking picturization designed to catch the eye and hold the pupil's attention. The diagrams on said pages of plaintiff's book are new and original and the result of creative imagination.

11. Plaintiff's book, by reason of said new diagrams, was well received by the teaching profession, who recognized the diagrams as being original and novel and of high pedagogical value as an aid to high school students of chemistry. In some schools, enlarged photostats of these diagrams were displayed in the school room where the students were doing chemical laboratory work or engaged in class work in chemistry.

12. Defendant, subsequent to the procuring of copyright in plaintiff's book and subsequent to the publication of plaintiff's book, printed, published and sold the book entitled "Chemistry", "Plaintiff's Exhibit 3", defendant's book.

13. Defendant had actual access to plaintiff's book in the Fall of 1936. Mr. Gentilini, a representative of the Colonial Book Company, gave a copy of plaintiff's book to Mr. Beller, defendant's president.

14. At the time mentioned in finding of fact No. 13, the review book in chemistry being published and sold by defendant's predecessor company, Amsco Book Company, of which said Beller was the president, was "Plaintiff's Exhibit 5", containing the same textual matter as in "Plaintiff's Exhibit 3", but without any diagrams.

15. In changing from "Plaintiff's Exhibit 5" to "Plaintiff's Exhibit 3", defendant merely added in successive pages, without any textual matter (among others) the diagrams referred to in Finding of Fact No. 7.

16. The diagrams on the following pages of defendant's book are respectively substantial copies of the diagrams on the following corresponding pages of plaintiff's book:

| Defendant's Book | Plaintiff's Book |
|---|---|
| 47 | 7 |
| 48 | 15 |
| 52 | 88 |
| 60 | 91 |
| 53 | 95 |

| | |
|---|---|
| 54 | 106 |
| 55 | 107 |
| 56 | 110 |
| 58 | 125 |
| 59 | 129 |
| 62 | 137 |

Each of defendant's said diagrams conveys to the person seeing it the same idea created by the original, i. e. plaintiff's corresponding diagram, and is so similar in all essentials to the original that by ordinary observation one would recognize defendant's diagram to be a reproduction of or taken from plaintiff's corresponding diagram.

17. Defendant rested upon plaintiff's case and offered in evidence no prior source or sources for the diagrams on said pages of defendant's book, or that the defendant's diagrams were created independently and without copying from plaintiff's book.

18. In particular, the evidence shows the diagram relating to the preparation of sulphuric acid, on page 56 of defendant's book, was directly copied from the corresponding diagram on page 110 of plaintiff's book. The funnel and crucible arrangement shown to the extreme left of the diagram on page 110 of plaintiff's book does not appear in any prior source. This is copied in the defendant's diagram. Plaintiff's diagram is erroneous in two respects: (a) the apparatus will not work because there is a large air space between the crucible and funnel and there would not be sufficient suction to draw the sulphur dioxide and air through the apparatus under the action of the aspirator. Also, the sulphur dioxide, a very pungent and harmful gas, would escape into the room; (b) the diagram is incorrectly labeled "Laboratory Preparation of Sulphuric Acid by Contact Process". The apparatus shown in this diagram is not a laboratory preparation or experiment performed by the high school student in the laboratory. It is merely a demonstration apparatus used by teachers. The above errors in plaintiff's diagram appear in defendant's diagram, in which likewise a large air space is shown between the crucible and the funnel, and defendant likewise labeled its diagram erroneously as "Laboratory Preparation of Sulphuric Acid".

## Conclusions of Law.

1. Plaintiff has a good and valid copyright in the book entitled "Mastery Units In Chemistry", "Plaintiff's Exhibit 2".

2. Plaintiff's copyright extends to each diagram contained in its book.

3. The diagrams on the pages of defendant's book set forth in finding of fact No. 16 are copies of and were copied from the diagrams appearing on the corresponding pages of plaintiff's book, as set forth in said Finding of Fact.

4. Such copying of plaintiff's diagrams constitutes copying of a material and substantial part of plaintiff's book, in infringement of plaintiff's copyright.

5. Plaintiff is entitled to a permanent injunction restraining defendant, its officers, agents and associates from infringing plaintiff's copyright, limited, however, to the eleven diagrams or pages here in issue and referred to in finding of fact No. 16 and conclusion of law No. 3.

6. Plaintiff is entitled to recover from defendant its profits unlawfully made from such infringement, and the damages sustained by plaintiff as a result thereof, together with a reasonable counsel fee and its costs, and to a reference to a Special Master to be appointed by this Court, to ascertain, take and report to the Court an account of said profits, gains and advantages and to assess the damage, if any.

Judgment accordingly. Settle judgment before the Clerk on usual notice.