## COLONIAL BOOK CO., Inc., v. OXFORD BOOK CO., Inc.

District Court, S. D. New York.
April 22, 1942.

Morris Kirschstein, of New York City, for plaintiff.

Gray & Grossman, of New York City (Herman A. Gray and Max Grossman, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff charges that the defendant has infringed plaintiff's statutory copyright of a book entitled "Mastery Units in Chemistry" (copyrighted August 20, 1936) by publishing a book entitled "Visualized Chemistry" (copyrighted January, 1938). Plaintiff seeks an injunction, damages and an accounting of profits. Defendant denies infringement and pleads as special defenses laches and the fact that plaintiff does not come into this court of equity with clean hands.

There is no claim that any of the text of plaintiff's book was copied by the defendant. The alleged infringement is based upon two claims—(1) that the defendant followed the "general scheme and sequence and arrangement of subject matter and method of presentation" of plaintiff's book and (2) that defendant copied certain diagrams or illustrations showing the apparatus used in the laboratory experiment together with the chemical substance used and the equation of the chemical reaction, the latter set forth in a legend immediately below the apparatus.

I have made findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which are being filed together with this opinion. Matton Oil Transfer Corp. v. The Tug Dynamic, 2 Cir., 123 F.2d 999. The defendant has not infringed.

I have found that the general scheme and sequence and arrangement of the subject matter was planned and devised by Dr. Lemkin, the author of defendant's book, prior to the publication of plaintiff's book and that this idea as to the arrangement of various chapters on chemistry was used by one A. Victor Gentilini, who was an editor in the employ of the defendant and at the same time was secretly a stockholder, director and editor for a company of his own (the first Colonial Book Company, Inc.) engaged in the preparation of plaintiff's book. I have also found that the idea of representing the chemical equation of reaction on a strip below the illustration of the laboratory apparatus and the chemical substance used in the laboratory experiment was not original with plaintiff.

The arrangement of the subject matter, the sequence of chapters, as submitted by plaintiff's authors, Messrs. Roberts and Smith, was the usual standardized arrangement found in many earlier text books on chemistry. So were their diagrams. Mr. Gentilini suggested an improvement of the diagrams so that the drawings would represent the pedagogical concepts insofar as it was possible. He got this idea from his conferences with Dr. Lemkin, the defendant's author, an experienced instructor in chemistry. The same is true of the arrangement of the chapters of plaintiff's book. Mr. Gentilini was in the employ of defendant at the time. In fact Mr. Gentilini continued in the employ of the defendant until a few weeks before the publication of plaintiff's book.

■ Mr. Gentilini's corporation, of which he was a stockholder and director, met with financial reverses in 1939. On June 1st, 1939, he obtained a position with the College Entrance Book Co., Inc., owned by Mr. Theodore Cohen. At the time he told Mr. Cohen what his prior connections with the

defendant had been. On August 24, 1939, the assets of the first Colonial Book Co., Inc., were sold to its principal creditor, the Colonial Press. On August 31, 1939, Mr. Cohen acquired these assets from the Press Company. In October, 1939, Mr. Cohen conveyed these assets, including the copyright of "Mastery Units in Chemistry" to the plaintiff which he organized for that purpose. Mr. Gentilini's corporation of the same name was dissolved shortly before that. I have found that Mr. Cohen knew that Mr. Gentilini had been working on the book now owned by plaintiff while he was in the employ of the defendant and that while thus engaged privately on plaintiff's book he was in consultation with officers of the defendant and with Dr. Lemkin, a professor of chemistry, who had been engaged to prepare defendant's book entitled "Visualized Chemistry". I have concluded that plaintiff does not come into this court of equity with clean hands and for that reason, among others, the bill of complaint should be dismissed on the merits.

On the legal questions involved, I do not believe that any special arrangement of chapters for a work on chemistry, i. e., the idea as to what the proper divisions of such a work should be, is copyrightable. Oxford Book Co. v. College Entrance Book Co., 2 Cir., 98 F.2d 688, 691.

With respect to certain illustrations or cuts used in defendant's book which are alleged to have infringed plaintiff's publication, it is apparent from the various charts offered during the trial that the illustration of the laboratory arrangement of the apparatus to be used in the chemistry experiment is pretty much standard and stereotyped. Likewise, the idea of placing the chemical names or symbols for the substance used in the experiment, on the illustration of the laboratory apparatus, had been used by other authors. Indeed, there is some basis for the argument that much of what plaintiff used as illustrations in its book was obtained by Mr. Gentilini from old publications of the defendant on chemistry subjects. In some instances both plaintiff and defendant copied these illustrations of the laboratory apparatus from books on chemistry by other authors and publishers.

What plaintiff stresses particularly is that the use of a chemical equation immediately beneath the illustration of the chemical apparatus, as part of the same cut, was something new. The only thing new about it was its position on a panel immediately beneath the illustration of the chemical apparatus. Other and older books on chemistry had represented the chemical equation of reaction in the body of the illustration. There was nothing new about visualizing the equation of reaction in illustrations of the laboratory experiment.

Plaintiff has referred to a decision of Judge Nevin (sitting by designation in this district) in a suit instituted by plaintiff against Amsco School Publications and decided by Judge Nevin in September 1941. Colonial Book Co. v. Amsco School Publications, D.C., 41 F.Supp. 156, 161. That suit involved plaintiff's publication "Mastery Units in Chemistry". Judge Nevin found in favor of the plaintiff. Among his findings of fact is the following: "17. Defendant rested upon plaintiff's case and offered in evidence no prior source or sources for the diagrams on said pages of defendant's book, or that the defendant's diagrams were created independently and without copying from plaintiff's book."

Judge Nevin did not have before him the evidence presented in the present case, both as to prior publication, the true sources of the ideas, and Mr. Gentilini's activities. For that reason Judge Nevin's decision is in no way controlling.

I believe that the facts now presented also warrant the application of the old equity maxim that one who seeks relief in a court of equity "must come into court with clean hands". The unconscionable action of plaintiff's predecessor, of which plaintiff had notice, has an "immediate and necessary relation to the equity" that plaintiff seeks in respect of the matter in litigation. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293. The maxim should be applied "for the advancement of right and justice." The complaint is dismissed on the merits.