**TWIN BOOKS CORPORATION,**
Plaintiff–Appellant,

v.

The **WALT DISNEY COMPANY; Buena Vista Home Video, Inc.; and Buena Vista Pictures Distribution, Inc., Defendants–Appellees.**

No. 95–15250.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1996.

Decided May 20, 1996.

Joel Linzner, Ezra Hendon, and Lynn M. Humphreys, Crosby, Heafey, Roach & May, Oakland, California, for plaintiff-appellant.

Timothy E. Carr, Carr & Mussman, San Francisco, California, for defendants-appellees.

Before: BEEZER and HAWKINS, Circuit Judges, and QUACKENBUSH, Senior District Judge.*

* Honorable Justin L. Quackenbush, Senior Judge, United States District Court for the Eastern District of Washington, sitting by designation.

QUACKENBUSH, Senior District Judge:

Plaintiff Twin Books Corporation (Twin Books) appeals the district court's judgment granting the Defendants' Motion for Summary Judgment in this action for copyright infringement brought pursuant to the Copyright Act of 1909, ch. 320, 35 Stat. 1075, current version at 17 U.S.C. §§ 101 *et seq.* The district court had original jurisdiction pursuant to 28 U.S.C. § 1338(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

## Bambi, A Life in the Woods

This appeal involves the children's classic tale, *Bambi, A Life in the Woods.* It is a very common misconception that *Bambi* was the brainchild of the world's foremost entertainer of children, Walt Disney. To the contrary, the young fawn named *Bambi* was brought to life in Austria by an Austrian citizen named Felix Salten, and was born in the wooded wilderness of Germany in 1923. *Bambi* learned very early in life that the meadow, where his mother took him to graze and play, was full of potential dangers everywhere he turned. Unfortunately, *Bambi*'s creator, Mr. Salten, could not know of the equally dangerous conditions lurking in the world of copyright protection under the United States Copyright Act of 1909, particularly as it pertained to Salten, a foreign author publishing his work in a foreign country.

The first appearance of the German speaking *Bambi* in Germany in 1923 by publication contained no notice to the world that Mr. Salten intended to protect the young German fawn. Therefore, *Bambi* was fair game for any deer hunter in the world outside of Germany. However, in 1926, Salten must have realized this potential danger, and therefore, he republished the German language *Bambi, A Life in the Woods* in Germany, this time with a notice of United States copyright, in an attempt to afford *Bambi* some protection from the dangerous American hunters. The copyright on the *Bambi* story was timely registered in the United States in early 1927.

On December 3, 1936, Salten and his publisher assigned certain rights in the *Bambi* book to Sidney Franklin, who then in 1937, assigned his rights in *Bambi* to Walt Disney (Disney). Disney made an instant star out of *Bambi*, first releasing the animated *Bambi* movie in 1942. The movie has been rereleased seven times, and Disney has very successfully marketed numerous *Bambi* products, including video cassettes, toys, and books based on the *Bambi* story.

The author Salten died in 1945. His daughter and heir, Anna Salten Wyler, renewed the U.S. copyright on *Bambi* in 1954. In 1958, Anna Wyler negotiated and executed three agreements with Disney concerning her rights in *Bambi.* Anna Wyler died in 1977, leaving her husband Veit Wyler as her sole heir and successor to her right in the literary properties of her father, the author Salten. In 1993, Veit Wyler and his two children assigned all their rights in *Bambi* to the Plaintiff Twin Books.

Disagreements arose as to the rights of the parties under the 1958 Wyler–Disney agreements, and Plaintiff then initiated this action. Defendant Walt Disney moved for summary judgment in the district court on three theories: (1) the *Bambi* book is in the public domain; (2) the 1958 Anna Wyler agreements granted Disney renewal copyrights in the *Bambi* motion picture throughout the second copyright term; and (3) the Veit Wyler assignment to Twin Books made Twin Books a non-exclusive licensee only. Twin Books also moved for summary judgment. In response to Twin Books' motion, Disney conceded there were triable issues of fact concerning the interpretation and effect of the Anna Wyler agreements with Disney. Because the legal effect of the subsequent Veit Wyler assignment to Twin Books also depends on the effect of the Anna Wyler agreements with Disney, the district court found that Disney's Motion for Summary Judgment rested solely on its argument that *Bambi* was and is in the public domain and that therefore, the copyrights were invalid.

Disney's public domain argument in the district court was threefold. Disney first claimed that *Bambi* fell into the public domain in 1923, when it was published without any notice of copyright in the German language in Germany. Disney next claimed that *Bambi* fell into the public domain in

1926, when the German language version was republished in Germany with a United States copyright notice allegedly misstating that the original publication occurred in 1926, rather than in 1923, a claim Disney does not pursue here, and we do not reach. Finally, Disney claimed that *Bambi* fell into the public domain in 1951, when Anna Wyler allegedly failed to timely renew the copyright.

The district court did not reach the arguments that *Bambi* fell into the public domain in 1923 or in 1926. Rather, the court found that United States copyright protection was secured and commenced in 1923, upon first publication of the German language book in Germany without any notice of copyright; that the 1954 renewal by Anna Wyler was untimely under the 1909 Copyright Act; and that *Bambi* fell into the public domain in 1951 because a renewal had not been timely filed. The court then held that President Eisenhower's Presidential Proclamation of 1960 did not save the 1954 renewal of copyright from being untimely, and finally, that licensee estoppel does not apply in this case. The district court entered summary judgment in favor of the Defendants.

In this court, Defendants renew their arguments that *Bambi* fell into the public domain in 1923, and in the alternative, that *Bambi* fell into the public domain in 1951. We find that *Bambi* did not fall into the public domain in 1923. We reverse the district court's findings that the initial copyright was secured and commenced in 1923, expired in 1951 when no renewal was filed, and therefore, that *Bambi* fell into the public domain in 1951. Therefore, we need not reach the issues concerning the Presidential Proclamation and/or licensee estoppel.

### 1. The 1909 Copyright Act

 It is undisputed that the 1909 Copyright Act, 17 U.S.C. §§ 1, *et seq.* (superseded 1976) applies in this case. Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme. *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.,* 672 F.2d 1095, 1101 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). When a work was published for the first time, it lost state common law protection. The owner could, however, obtain federal protection for the published work by complying with the requirements of the 1909 Copyright Act. If the owner failed to satisfy the Act's requirements, the published work was interjected irrevocably into the public domain precluding any subsequent protection of the work under the 1909 Copyright Act. *Id.*

The 1909 Act provided that an author was entitled to 28 years of protection from the date he or she secured a copyright on a work, and that the copyright could, before the first 28-year period expired, be renewed for another 28-year term. Section 9 of the 1909 Act provided that the author of any work could secure a copyright for his work under the conditions and terms specified in the Act. Section 10 provided that "[a]ny person ... may secure copyright for his work by publication thereof with the notice of copyright required by this title." Section 19 set forth the specifications of a proper notice.

### 2. The 1923 Publication

It is undisputed that the publication of the German language version of *Bambi* in Germany in 1923 did not meet with the requirements of the 1909 Copyright Act, in that it was published without the notice statutorily required if United States protection was sought. It is also undisputed, for purposes of this argument, that the 1923 publication in Germany satisfied whatever German requirements there were to prevent the work from falling into the public domain in Germany. Thus, Disney does not argue that the 1923 publication in Germany placed *Bambi* in the German public domain, but rather, that because it did not comply with the 1909 Act requirements, it fell into the public domain in the United States, and was, therefore, subject to anyone, including Disney, using it thereafter.

 The general rule under the 1909 Act is that a work must bear a valid copyright notice upon publication in order to secure

copyright protection in the United States. *Nimmer on Copyright* § 7.02(C)(1). Under that rule, a publication of a work in the United States without the statutory notice of copyright fell into the public domain, precluding forever any subsequent copyright protection of the published work. *See, e.g., LaCienega Music Co. v. ZZ Top*, 53 F.3d 950 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 331, 133 L.Ed.2d 231 (1995).

However, *Bambi, A Life in The Woods* was written by a foreign author, and was first published without a notice of copyright in a foreign language in a foreign country, and the general rule applicable to publications within this country does not necessarily apply. *Nimmer* notes that

> [a] heatedly debated question and one which has never been finally settled by judicial determination, relates to the question of whether a work first published outside of the United States was required under the 1909 Act to bear a copyright notice in order to claim copyright protection within the United States.

*Nimmer*, at § 7.12(D)(2)(a).

Some early courts dealing with the issue indicated that a publication abroad without any copyright notice, like a publication in this country without any copyright notice, would also serve to place the published work into the public domain, thereby precluding any subsequent United States copyright protection. *Universal Film Mfg. Co. v. Copperman*, 212 F. 301 (S.D.N.Y.), aff'd, 218 F. 577 (2nd Cir. *cert. denied*, 235 U.S. 704, 35 S.Ct. 209, 59 L.Ed. 433 (1914)); *American Code Co. v. Bensinger*, 282 F. 829 (2nd Cir.1922); *Basevi v. Edward O'Toole Co.*, 26 F.Supp. 41 (S.D.N.Y.1939). However, these decisions were at odds with the doctrine of territoriality put forth by the Supreme Court.

The idea that United States copyright law should not be given extraterritorial effect had its origins in the case of *United Dictionary Co. v. G. & C. Merriam Co.*, 208 U.S. 260, 28 S.Ct. 290, 52 L.Ed. 478 (1908). There, the Supreme Court looked at the copyright act that preceded the 1909 Act, and found that Congress did not intend the copyright laws to have extraterritorial effect. "Of course, Congress could attach what con-

ditions it saw fit to its grant, but it is unlikely that it would make requirements of personal action beyond the sphere of its control." *Id.* at 264, 28 S.Ct. at 290. A few years later, in *Ferris v. Frohman*, 223 U.S. 424, 32 S.Ct. 263, 56 L.Ed. 492 (1912), the Court applied the same territorial theory under the 1909 Copyright Act, holding that performance of a play in England did not alter that play's subsequent United States copyright status.

Many years later, in *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991), the Supreme Court reminded us that "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Id.* at 248, 111 S.Ct. at 1230 (citation omitted).

In 1946, the Second Circuit decided the case of *Heim v. Universal Pictures Co.*, 154 F.2d 480 (2d Cir.1946). In *Heim*, a song was first published in Hungary in 1935 without any notice of copyright, and an American copyright was subsequently secured in the United States in 1936 by publication with the statutory notice. The court rejected the argument that in order to obtain a valid American copyright, where publication abroad precedes publication in this country, the first copy published abroad must have had a statutory notice of copyright. Rather, the majority opinion stated that publication abroad with no notice or with an erroneous notice would not preclude subsequently obtaining a valid United States copyright.

> Such a requirement would achieve no practical purpose.... [T]he most practicable and, as we think, the correct interpretation, is that publication abroad will be in all cases enough, provided that, under the laws of the country where it takes place, it does not result in putting the work into the public domain. Assuming, arguendo, that plaintiff's publication in Hungary did not do so, it could not affect the [subsequent] American copyright that copies of his song were at any time sold there without any notice of the kind required by our statute, and it would therefore be of no significance, in its effect on the American copy-

right, if copies sold in Hungary bore a notice containing the wrong publication date.

*Heim,* 154 F.2d at 487.

The court noted that the Supreme Court in *United Dictionary,* 208 U.S. 260, 28 S.Ct. 290, held that if a work were copyrighted in the United States, the omission of notice of the American copyright from an edition subsequently published in England did not invalidate the copyright. The court found no reason to distinguish between a foreign publication occurring either before or after obtaining a United States copyright, and, therefore, found *Basevi v. Edward O'Toole, supra,* 26 F.Supp. 41 wrongly decided on that point.

More recently, this court reconfirmed that copyright laws have no extraterritorial operation in *Subafilms Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1095 (9th Cir.)(**en banc,** *cert. denied,* — U.S. —, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994)). "The 'undisputed axiom' (citing *Nimmer*) ... that the United States' copyright laws have no application to extraterritorial infringement predates the 1909 Act." *Id.* (citing *United Dictionary).* Congressional enactment must be presumed to be primarily concerned with domestic conditions. "It is for Congress, and not the courts, to take the initiative in this [copyright] field." *Id.* at 1098.

It is clear that from at least 1908, when *United Dictionary* was decided, to the present time, Congress has never indicated any intention to vary from the exclusively territorial application of United States copyright law. The *Subafilms* court went back prior to the 1909 Act, tracing the territorial concept, and bringing the axiom forward through the years, finding that United States copyright law applies to what takes place in the United States, not to what takes place in Italy, Germany, or any other foreign place.

■ Plaintiff Twin Books contends that because the 1909 Act had no extra-territorial effect, the 1923 publication of *Bambi* did not result in *Bambi* being placed in the public domain, and did not preclude subsequent United States copyright protection. Twin Books relies heavily on *Heim.* We agree, and adopt the reasoning of *Heim,* finding it to be

well-reasoned and the latest appellate pronouncement on the precise issue. It is recognized as such by the leading treatise on copyright, *Nimmer on Copyright* (1994); it has been followed by the United States Copyright Office; and it is consistent with the long-standing axiom that U.S. copyright laws have no extraterritorial effect.

In *Heim,* as noted above, the court, applying the 1909 Act, opined that publication without a copyright notice in a foreign country did not put the work in the public domain in the United States, "provided that, under the laws of the country where it takes place, it does not result in putting the work in the public domain." *Heim,* 154 F.2d at 487.

As there is no contention that *Bambi* fell into the public domain in Germany in 1923, under *Heim,* the 1923 publication of *Bambi* in Germany did not put *Bambi* in the public domain in the United States. Therefore, we find the 1923 publication did not preclude the author from subsequently obtaining copyright protection in the United States by complying with the 1909 Copyright Act.

### 3. Commencement of the United States Copyright

Disney contends, and the district court agreed, that the initial copyright of *Bambi* was secured and commenced in 1923 when it was first published in Germany without a copyright notice of any kind. We disagree.

■ Under the doctrine of territoriality, and under the clear language of the 1909 Copyright Act, United States copyright protection was not secured for *Bambi* until 1926, when in compliance with the Act's requirements, it was published with a United States copyright notice. During 1923, 1924, and 1925, anyone could have sold the *Bambi* book in the United States or made some derivative movie of the *Bambi* book, and the author Salten would have had no recourse under the United States copyright law. Nevertheless, the district court held that *Bambi*'s United States copyright term was running during the 1923–1926 years, when it was totally unprotected under United States copyright law. Such a result is neither warranted under the statute's language nor would it be

fair to the owner of a subsequent United States copyright.

 Disney is correct that publication in a foreign country with a notice of United States copyright secures United States copyright protection, and that a copyright thereby secured, endures for 28 years from the date it is first published with notice of United States copyright. In the 1909 Act, Congress offered foreign authors the same protection it offered American authors, but only upon compliance with the Act's formalities. However, Disney cites no authority, nor could it, for the proposition that publication abroad without notice of copyright secures protection under the 1909 Copyright Act. To the contrary, the clear language of section 10 of the 1909 Act provides that an author "may secure copyright for his work by publication thereof with the notice of copyright required by this title." There is absolutely no way to interpret that language to mean that an author may secure copyright protection for his work by publishing it without any notice of copyright. Additionally, to so argue is a complete reversal of Disney's alternative argument that *Bambi* fell into the public domain in 1923 when it was published without the statutorily required notice of copyright.

Therefore, we reverse the district court's finding that the copyright for *Bambi* was secured and commenced in 1923; rather we find that the initial copyright for *Bambi* was secured and commenced in 1926, when it was published with the notice of copyright required by the 1909 Act.

### 4. Renewal of the Copyright

Having found that the initial copyright was not secured and did not commence until 1926 leads to the undisputable additional finding that Ms. Wyler's failure to renew the copyright in 1951, within 28 years from 1923, did not result in *Bambi* falling into the United States public domain in 1951. There is no dispute that if the initial copyright did not commence until 1926, as we have determined, Ms. Wyler's 1954 renewal was timely and in compliance with the United States copyright laws. Under the 1909 Act, the initial copyright endured for 28 years from the date it was secured. Being secured in 1926, the initial copyright would have expired in 1954 had it not been renewed, which it was. Therefore, we also reverse the district court's findings that the 1954 renewal of the *Bambi* copyright was untimely and that *Bambi* fell into the public domain in 1951.

Because the initial *Bambi* copyright was secured and commenced in 1926, and was timely renewed in 1954, we do not reach the issues of whether a 1960 Presidential Proclamation saves an otherwise untimely renewal under the 1909 Copyright Act or whether the doctrine of licensee estoppel applies in a copyright case.

### CONCLUSION

We **reverse** the district court's findings that the initial *Bambi* copyright was secured and commenced in 1923, that the 1954 renewal of the copyright was untimely, and that *Bambi* fell into the public domain in 1951. Accordingly, we reverse the summary judgment in favor of the Defendants. The cause is **remanded** to the district court for further proceedings consistent with this Opinion. **REVERSED AND REMANDED.**