**SOCIÉTÉ CIVILE SUCCESSION RICHARD GUINO, a French Trust, Plaintiff,**

v.

**BESEDER, INC. (d/b/a Rima Fine Art), an Arizona corporation, et al. Defendants.**

**No. CIV 03–1310–PHX–EHC.**

United States District Court, D. Arizona.

Jan. 30, 2006.

Artemio Reategui, Richard William Morris, Morris Reategui PLLC, Surprise, AZ, for Plaintiff.

Joshua J. Kaufman, Venable Baetjer Howard & Civiletti LLP, Washington, DC, Phil Scott Flemming, Yen Pilch Komadina & Flemming PC, Ray Kendall Harris, Fennemore Craig PC, Phoenix, AZ, David Paul Steiner, David Steiner & Associates PLC, Los Angeles, CA, Gregory C. Kane, Gregory P. Konoske, Shifflet Kane & Konoske LLP, San Diego, CA, for Defendants.

## ORDER

CARROLL, District Judge.

Pending before the Court are Defendants Beseder Inc., Dror Darel and Tracy Penwell's Motion for Reconsideration [dkt. 298] and Defendant Jean–Emmanuel Renoir's[1] Motion for Reconsideration [dkt. 300], both of which seek reconsideration of the Court's Order [dkt. 291] granting summary judgment for Plaintiff on Count One of the Amended Complaint. Pursuant to the Court's Order [dkt. 315], Plaintiff filed a Response to the Motions [dkt. 326], and Defendants Beseder Inc., Dror Darel and Tracy Penwell filed a Reply [dkt. 330], joined by Defendants Jean–Emmanuel Renoir and Louise Renoir Hernandez[2] [dkt. 332].

### Background

The Motions for Reconsideration concern the status of copyright in sculptures created by Pierre–Auguste Renoir ("Re-

---

1. The Defendants who filed Motions to Reconsider will be referred to collectively as "Defendants."

2. Defendant Louise Renoir Hernandez did not file, or join in, a Motion for Reconsideration.

noir") and Richard Guino ("Guino"). Renoir and Guino created the sculptures between 1913 and 1917. [Dkts. 298, p. 4; 326, p. 3; 330, p. 2]. The sculptures were published in France as works of Renoir by 1917. [Dkts. 298, p. 4; 330, pp. 2–3; 362, p. 4]. The sculptures were published as Renoir–Guino works in 1974, in an exhibition for sale held at the Bristol Hotel in Paris, France. [Dkts. 299, exs. A (catalogue) & B (price list); 300, p. 2; 302, p. 2; 326, p. 7].

Plaintiff Société Civile Succession Richard Guino ("Plaintiff") is a French Trust that was created pursuant to an agreement between the estate of Pierre–Auguste Renoir and the estate of Richard Guino. Plaintiff registered the copyright to the sculptures with the Copyright Office in the United States on June 11, 1984.

Defendant Jean–Emmanuel Renoir sold some of the copyrighted sculptures, or molds and castings thereof, to Defendants Beseder, Inc., Dror Darel and Tracy Penwell, who advertised and sold the sculptures and castings at their gallery in Scottsdale, Arizona.

On March 1, 2005, Plaintiff filed an Amended Complaint alleging, *inter alia,* copyright infringement.[3] [Dkt. 190]. Defendants filed Counterclaims asking the Court to declare that Plaintiff has no copyright in the sculptures. [Dkts. 73, 111].

On September 7, 2005, the Court granted summary judgment for Plaintiff on Count One of the Amended Complaint alleging copyright infringement.[4] [Dkt. 291]. The Court found (1) that Plaintiff held copyrights in the sculptures and (2) that Defendants had infringed the copyrights by reproducing, displaying and selling the sculptures. Defendants do not challenge the second finding, but ask the Court to reconsider the first.

### Legal Standard

■ "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999).

### Discussion

### A. The Court's Finding of Copyright Protection under 17 U.S.C. § 302(b)

■ In granting summary judgment for Plaintiff, the Court found that the sculptures were first published in 1917. [Dkt. 291, p. 6]. The Court further found that the sculptures were not first published as Renoir–Guino works until 1983. [Dkt. 291, p. 9 ("The year 1983 was the first year that the works were published under Guino's name.")]. The Court treated 1983 as a

---

3. Plaintiff alleges it holds copyright to the following sculptures (VA numbers are the copyright registration numbers): (1) Petite Tete De Venus (Tete de la Petite Venus), VA 180–810; (2) La Maternite, VA 180–811; (3) Buste de Madame Renoir, VA 180–812; (4) Venus Vitrix, VA 180–813; (5) Petite Venus Debout, VA 180–814; (6) Medaillon Cezanne, VA 180–815; (7) Variante Petit Forgeron, VA 74–833; (8) Le Forgeron, VA 74–834; (9) La Grande Laveuse, VA 74–835; (10) La Laveuse (Petite Laveuse or "L'Eau"), VA 74–836; and (11) La Laveuse (La Laveuse Moyenne ou L'Eau), VA 74–837. [Dkt. 190, pp. 6–7].

4. The Motion for Summary Judgment [dkt. 165] and Cross–Motions for Summary Judgment [dkts. 170, 173] referred to Count One of the Complaint [dkt. 1]. While the Motions for Summary Judgment were pending, the Court granted leave to amend the Complaint to add a claim for conversion [dkt. 186] and Plaintiff filed an Amended Complaint [dkt. 190]. Count One of the Complaint is substantially identical to Count One of the Amended Complaint. [*Compare* dkt. 1, ¶¶ 36–41, *with* dkt. 190, ¶¶ 36–41]. Thus, the Court's Order granted summary judgment for Plaintiff on Count One of the Amended Complaint.

" 'new' date of first publication" and found "that Guino is entitled to copyright protection in the works as provided by law in 1983 upon the 'new' date of first publication." [Dkt. 291, p. 9]. Therefore, the Court found that the sculptures "are entitled to United States copyright protection until the year 2043." [Dkt. 291, p. 10].

In so finding, the Court applied the copyright protection term provided by 17 U.S.C. § 302(b),[5] which provides a copyright term "consisting of the life of the last surviving author and 70 years[6] after such last surviving author's death." Section 302[7] only applies to "a work created on or after January 1, 1978."

In applying § 302(b), the Court did not address whether the sculptures were "created on or after January 1, 1978," instead focusing on the "new" first publication date as the basis for applying § 302(b). Publication is irrelevant in determining whether the copyright protection provided by § 302, enacted in 1976, applies to a particular work. As the United States Supreme Court explained:

> In 1976, Congress altered the method for computing federal copyright terms. 1976 Act §§ 302–304. For works created by identified natural persons, the 1976 Act provided that federal copyright protection would run from the work's creation, notas in the 1790, 1831, and 1909 Actsits publication.

*Eldred,* 537 U.S. at 195, 123 S.Ct. at 776. Because the date of creation not the date of publication is the basis for copyright protection under § 302, § 302(b) cannot apply based on the 1983 "new" publication date.

Applying the copyright protection provided by § 302(b) was clear error because the works at issue in this case were not "created on or after January 1, 1978." *See* § 302(a). Under the copyright law, "[a] work is 'created' when it is fixed in a copy or phono record for the first time." § 101. According to the parties, Renoir and Guino created the sculptures between 1913 and 1917.[8]

## B. Copyright Protections for Works Created before January 1, 1978

Given the finding that § 302 does not apply, the status of copyright protection for the sculptures remains to be determined. As previously noted, the Copyright Act of 1976 changed the basis of copyright protection from publication of a work to creation of a work. *See Eldred,* 537 U.S. at 195, 123 S.Ct. at 776. That change applies to works "created on or

---

5. Unless otherwise stated, all sections cited are from Title 17 of the United States Code.

6. As enacted in 1976, § 302 provided a 50-year term of protection after the death of the last surviving author. The term was increased to 70 years by amendment in 1998. *See Eldred v. Ashcroft,* 537 U.S. 186, 193, 123 S.Ct. 769, 775, 154 L.Ed.2d 683 (2003) (holding that the 1998 amendment is constitutional).

7. As titled and in relevant part, § 302 provides:

> Duration of copyright: Works created on or after January 1, 1978
>
> (a) In general. Copyright in a work created on or after January 1, 1978, subsists from its creation and, except as provided by the following subsections, endures for a term consisting of the life of the author and 70 years after the author's death.
>
> (b) Joint works. In the case of a joint work prepared by two or more authors who did not work for hire, the copyright endures for a term consisting of the life of the last surviving author and 70 years after such last surviving author's death.

8. Plaintiffs state that the works were created in 1916. [Dkt. 326, p. 3]. Defendants state that the works were created between 1913 and 1917. [Dkts. 298, p. 4; 330, p. 2]. That difference is inconsequential in determining that the works were not "created on or after January 1, 1978."

after January 1, 1978." § 302. In making that change, Congress also provided copyright protection terms for works created before 1978. Currently, copyright law protects four types of works: (1) works "created on or after January 1, 1978," § 302; (2) works copyrighted as of January 1, 1978, § 304; (3) works "created before January 1, 1978, but not theretofore in the public domain or copyrighted," § 303(a); and (4) foreign works not in the public domain in their country of origin but in the public domain, for enumerated reasons, in the United States, § 104A. As discussed above, § 302 does not apply in this case. The sculptures were copyrighted in 1984; § 304 does not apply. The question is whether the copyright protection of either § 303(a) or § 104A applies. The application of those sections turns on whether the works passed into the public domain in the United States. *See* §§ 303(a) (applies to works not in the public domain before January 1, 1978) & 104A (foreign works in public domain in the United States).

■ The copyright statute does not define the phrase "public domain." *See* § 101 (definitions). Under the 1909 Copyright Act, a work enters the public domain when it is published without copyright protection.[9] *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir.2000) ("When a work was published, it lost common law protection. The owner [of the work] could obtain federal protection for the published work by complying with the 1909 Act's requirements; otherwise, the work entered the public domain.").

Publication in a foreign country affects whether the work is published without copyright protection, and thereby affects whether the work is in the public domain in the United States. The Ninth Circuit has held "that publication without a copyright notice in a foreign country [does] not put the work in the public domain in the United States." *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1167 (9th Cir. 1996). In that case, the children's tale *Bambi, A Life in the Woods* was published in Germany in 1923 without a copyright notice. *Bambi* was subsequently published in Germany in 1926 with a copyright notice. Copyright was registered in the United States in 1927 and renewed in 1954. *Id.* at 1164. Under the 1909 Copyright Act, copyright must be renewed within 28 years of the commencement of copyright protection or the copyright would expire. *Id.*, at 1165. Therefore, the 1954 renewal was timely if copyright protection had commenced with the 1926 publication; untimely if it commenced with the 1923 publication. *See id.*, at 1168.

■ The Ninth Circuit dealt first with the question whether the 1923 publication without notice placed *Bambi* in the public domain in the United States. *Id.*, at 1165. The Court found that this was a "heatedly debated question." *Id.*, at 1166 (internal quotation omitted); *accord* 2 USA International Copyright Law and Practice § 3[2][b][3] fn. 46 (Paul Edward Geller gen. ed. 2005) ("It has never been clearly established whether a work only published abroad is to be treated as a published work for purposes of duration under U.S. law or should be treated as unpublished for these purposes."). The Court noted that "early courts dealing with the issue indicated that a publication abroad without any copyright notice, like a publication in this country without any copyright notice,

---

**9.** This rule should apply to the copyright law as currently enacted. The 1976 Act changed the basis for computing copyright protection from publication to creation. *Eldred*, 537 U.S. at 195, 123 S.Ct. at 776. That change will affect whether a work has been published without copyright protection, but does not change the rule that publication without copyright protection places a work in the public domain.

would also serve to place the published work into the public domain." *Ibid.* The Court found that those decisions "were at odds" with Supreme Court decisions holding "that United States copyright law should not be given extraterritorial effect." *Ibid.* Finally, the Court adopted the holding of *Heim v. Universal Pictures Co.,* 154 F.2d 480 (2d Cir.1946), "finding it to be well-reasoned and the latest appellate pronouncement on the precise issue" and "recognized as such by the leading treatise on copyright, *Nimmer on Copyright* (1994)." *Twin Books,* 83 F.3d at 1167. The Court read *Heim* to hold that "publication without a copyright notice in a foreign country did not put the work in the public domain in the United States." *Twin Books,* 83 F.3d at 1167.

The Ninth Circuit next addressed the question whether the 1923 publication in Germany without notice of copyright commenced the term of United States copyright protection. *Ibid.* The Court looked to the language of the 1909 Copyright Act in rejecting "the proposition that publication abroad without notice of copyright secures protection under the 1909 Copyright Act." *Id.,* at 1168. The Court reversed the district court, which found the 1923 foreign publication without notice commenced the copyright term. *Ibid.* The Court found that the copyright term commenced in 1926, when *Bambi* was republished in Germany with notice of copyright. Therefore, the Court found that the 1954 renewal was timely. *Ibid.*

### 1. Criticism of the Ruling in *Twin Books*

The Court will follow *Twin Books, see infra,* but expresses criticism of the rule announced in *Twin Books* to avoid "bur[ying] the issue by proceeding in a summary fashion." *Eberhart v. United States,* —— U.S. ——, 126 S.Ct. 403, 407, 163 L.Ed.2d 14 (2005) (approving of the Seventh Circuit's approach in applying Su-

preme Court precedent after expressing doubts). The *Twin Books* Court's reading of *Heim* is arguably incorrect, leads to an unreasonable result, and unduly restricts the copyright restoration provisions of § 104A.

*Heim* involved a "mistake of date in the notice of copyright." 154 F.2d at 486. The work at issue in that case was a song published in Hungary on November 11, 1935 without a copyright notice. *Ibid.* Copyright in the song was registered on September 14, 1936. *Ibid.* The Second Circuit construed the 1909 Act, "as to publication in a foreign country by a foreign author . . ., not to require, as a condition of obtaining or maintaining a valid American copyright, that any notice be affixed to any copies whatever published in such foreign country." *Ibid.* Concurring, Judge Clark found that "[t]he opinion holds that American copyright is secured by publication abroad without the notice of copyright admittedly required for publication here." *Id.,* at 488. *Heim,* therefore, arguably stands for the rule that foreign publication without a copyright notice can commence the term of an American copyright, not the rule that foreign publication cannot place a work in the public domain in the United States, which the Ninth Circuit adopted in *Twin Books,* 83 F.3d at 1167.

Although those rules are closely related, they have dramatically different consequences. The *Heim* rule, that foreign publication without notice can commence the term of copyright, effectively waives, for foreign works, the copyright notice required to secure copyright protection under the 1909 Act. *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 7.12[D][2][a] (2005) (the Court in *Heim* "concluded that notice in connection with such foreign publications was required neither to obtain nor to maintain United States copyright"). Applying the *Heim* rule to a foreign publica-

tion, the term of copyright would commence as of the date of publication, even if the first publication was in a foreign country and without notice of copyright. *See Nimmer on Copyright*, at § 4.01[C][1].

The *Twin Books* rule, in contradistinction, provides that a foreign publication without copyright notice does not commence the term of copyright. *Twin Books* expressly rejected "the proposition that publication abroad without notice of copyright secures protection under the 1909 Act." 83 F.3d at 1168. The Court rejected that proposition without discussing *Heim*, 154 F.2d at 486, which supports the proposition that foreign publication without notice secures copyright protection. *Nimmer on Copyright*, § 4.01[C][1]. The Court in *Twin Books* "reverse[d] the district court's finding that the copyright for *Bambi* was secured and commenced in 1923." 83 F.3d at 1168. Fortuitously, *Bambi* was republished in Germany in 1926 with notice. *Twin Books*, 83 F.3d at 1164. That republication enabled the Court to find that "that the initial copyright for *Bambi* was secured and commenced in 1926, when it was published with the notice of copyright required by the 1909 Act." 83 F.3d at 1168.

The *Twin Books* rule leads to an unreasonable result when applied to a pre–1978 work published in a foreign country that has not been republished with a notice of copyright. Under the *Twin Books* rule, the foreign publication without copyright notice would neither place the work in the public domain in the United States, *see id.*, at 1167 ("publication without a copyright notice in a foreign country did not put the work in the public domain in the United

States"), nor commence the term of copyright, *see id.*, at 1168 (finding that 1923 publication abroad without copyright notice did not commence a term of copyright protection). Because such a work was "created before January 1, 1978, but not theretofore in the public domain or copyrighted" it would be protected by copyright under § 303(a). This is so even in the case of an ancient work. *Nimmer on Copyright*, § 4.01[C][1] ("even a work of ancient origin such as a Greek tragedy that was published (obviously without notice) millennia ago, but which has not been republished with a U.S. style copyright notice is still protected today in this country.");[10] *cf.* 2 USA International Copyright Law and Practice § 3[2][b][3] fn. 46 (noting that the Copyright Office has not incorporated the *Twin Books* rule into its regulations, continuing to require a copyright application to "state the date of first publication in any country where the work is first published"). This is also the result, as discussed below, in this case, even though the owners of the works have enjoyed the benefits of displays and public sales of the sculptures since 1917. Were the 1917 publication to have commenced the term of copyright, the sculptures would have had two 28–year terms of copyright protection, and copyright would have expired in 1973. *See Eldred*, 537 U.S. at 194, 123 S.Ct. at 775 (under 1909 Act, copyright lasted "28 years from publication, renewable for an additional 28 years").

The *Twin Books* rule would prevent a foreign work published without notice from being eligible for copyright restoration under § 104A, which expressly provides copyright restoration for foreign works

---

**10.** For a jocular expression of this view, *see* David Nimmer, *An Odyssey Through Copyright's Vicarious Defenses*, 73 N.Y.U. L.Rev. 162, 172–73 (1998), where the author imagines Achilles asserting copyright protection in *The Iliac* on grounds that the ancient publication of that work did not commence the copyright term or place the work in the public domain in the United States.

published without notice of copyright. *See* § 104A(h)(6)(C)(i). Section 104A was enacted to restore "copyrights of foreign holders whose works, though protected under the law where initially published, fell into the public domain in the United States." *Luck's Music Library v. Gonzales,* 407 F.3d 1262 (D.C.Cir.2005); *accord Golan v. Gonzalez* (sic), 2005 WL 914754, *1, 2005 U.S. Dist. LEXIS 6800, *2 (D.Colo. Apr. 20, 2005) (section 104A "restores copyright protection to works of foreign authors"). A prerequisite to restoration under § 104A is that a work is in the public domain, for enumerated reasons, in the United States. § 104A(h)(6)(C). One of those reasons is "noncompliance with formalities imposed at any time by United States copyright law including . . . lack of proper notice." § 104A(h)(6)(C)(i). The *Twin Books* rule provides that a work published in a foreign country without copyright notice is not in the public domain in the United States, 83 F.3d at 1167, unduly preventing the copyright restoration of such a work as provided by § 104A(h)(6)(C)(i).

## 2. Application of *Twin Books* to this Case

■ Despite this criticism, *Twin Books* governs this case as the most recent decision on this issue by the Ninth Circuit, or any of the Circuit Courts.[11] The sculptures in this case were published in France as Renoir works by 1917. [Dkts. 326, p. 4; 330, p. 3]. The sculptures were published as Renoir–Guino works in 1974, in an exhibition for sale held at the Bristol Hotel in Paris, France. [Dkts. 299, exs. A (catalogue) & B (price list); 300, p. 2; 302, p. 2; 326, p. 7]. Neither party asserts that the sculptures were published with notice of a United States copyright. Because those publications were in a foreign country and without notice of United States copyright they "did not put the work in the public domain in the United States." *Twin Books,* 83 F.3d at 1167.

Section 104A is inapplicable because, pursuant to *Twin Books,* the works have not passed into the public domain in the United States as required in subsection (h).[12]

11. One treatise asserts that *Twin Books* has not settled the question of the affect of a foreign publication without notice. 2 USA International Copyright Law and Practice § 5[a][i] ("Under the 1909 Act, questions concerning the absence of notice on copies published abroad before 1978, is still the subject of debate even in light of an important decision [*Twin Books*] in one influential circuit."). The Court can find no post-*Twin Books* cases debating that question.

The question was nearly raised in *Condon Art B.V. v. Walker,* 1996 U.S. Dist. LEXIS 20708 (N.D.Cal.1996), filed in August 1996 after *Twin Books* was filed in May 1996. *Condon Art* involved a dispute over works and derivative works created by M.C. Escher, a Dutch graphic artist, indicating his works may have been published abroad. The Court did not have occasion, however, to address questions raised by foreign publication because it found "no evidence suggesting that either the original Escher drawings or the

master blocks have ever been subject to a general publication within the meaning of the Copyright Act." *Id.,* at *12.

12. The Copyright Restoration Act, § 104A, would not apply to the sculptures in the absence of *Twin Books.* Section 104A does not apply to works whose term of United States copyright protection has naturally expired. *Golan,* 2005 WL 914754 at *16. In the absence of the Ninth Circuit's decision in *Twin Books,* the copyright term for the sculptures would have commenced in 1917. *See* the district court's order in *Twin Books v. Walt Disney,* 877 F.Supp. 496, 498–99 (N.D.Cal. 1995) (finding that the 1923 German publication of *Bambi* commenced the term of copyright). If the copyright in the sculptures commenced in 1917, this Court's previous discussion would be determinative:

Assuming that the works were registered, the term of protection would have been 28 years with an optional 28 year renewal. The term of copyright protection would

Section 303(a) applies because the sculptures were "created before January 1, 1978, but not theretofore in the public domain or copyrighted." The sculptures were created between 1913 and 1917. [Dkts. 298; p. 4, 326, p. 3; 330, p. 2]. Pursuant to *Twin Books,* the sculptures have not passed into the public domain. The sculptures were copyrighted in 1984.

Section 303(a) provides copyright protection "for the term provided by section 302," which is a term of 70 years after the death of the last surviving author. As the Court previously found: "Renoir passed away in 1919, and Guino died in 1973. Thus, the sculptures are entitled to United States copyright protection until the year 2043." [Dkt. 291, p. 10].

*Conclusion*

The Court again concludes that the sculptures have copyright protection until 2043. The Court is of the opinion that there are substantial grounds for difference of opinion regarding the existence of copyright protection for the sculptures. The existence of copyright in these sculptures is a question material to the resolution of this case. First, the existence of copyright, and Defendants' consequent liability for infringement, affect whether Plaintiff may be awarded actual or statutory damages, costs and attorneys' fees, injunctive relief, and seizure and delivery of the infringing materials to Plaintiff, as prayed for in the Amended Complaint.[13] [Dkt. 190, pp. 11–12]. Second, the only claims remaining are Plaintiff's Lanham Act and common law conversion claims, which arguably turn on, or are at least affected by, the resolution of the copyright claim. Given this situation, an immediate

appeal may advance the termination of this case. *See* 28 U.S.C. § 1292(b).

Accordingly,

**IT IS ORDERED** that Defendants Beseder Inc., Dror Darel and Tracy Penwell's Motion for Reconsideration [dkt. 298] and Defendant Jean–Emmanuel Renoir's Motion for Reconsideration [dkt. 300] are **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Court's Order [dkt. 291] granting Plaintiff's Motion for Partial Summary Judgment and denying Defendants' Beseder, Inc., Dror Darel, Tracy Penwell and Jean–Emmanuel Renoir's Cross–Motions for Partial Summary Judgment is **AFFIRMED** for the reasons stated in this Order.

**IT IS FURTHER ORDERED** that this Order involves controlling questions of law as to which there are substantial grounds for difference of opinion regarding copyright protection for the sculptures and that an immediate appeal may materially advance the ultimate termination of the litigation.

have naturally expired in 1973. Thus, the Copyright Restoration Act does not apply. [Dkt. 291, p. 8].

13. By Order issued this same day, the Court addresses Plaintiff's request for injunctive relief. Plaintiff's damages, among other things, have yet to be determined, preventing the Court from entering final judgment on the copyright infringement claim pursuant to Fed.R.Civ.P. 54(b).