# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOCIETE CIVILE SUCCESSION
RICHARD GUINO, a french trust,
_Plaintiff-Appellee,_

v.

JEAN-EMMANUEL RENOIR, an
individual,
_Defendant-Appellant,_

and

BESEDER INC., doing business as
Rima Fine Art; DROR DAREL,
husband; TRACY L. PENWELL, wife,
_Defendants._

No. 07-15582

D.C. No.
CV-03-01310-MHM

SOCIETE CIVILE SUCCESSION
RICHARD GUINO, a french trust,
_Plaintiff-Appellee,_

v.

JEAN-EMMANUEL RENOIR, an
individual,
_Defendant,_

and

BESEDER INC., doing business as
Rima Fine Art; DROR DAREL,
husband; TRACY L. PENWELL, wife,
_Defendants-Appellants._

No. 07-15583

D.C. No.
CV-03-01310-MHM

16111

SOCIETE CIVILE SUCCESSION
RICHARD GUINO, a french trust,
                    *Plaintiff-Appellant,*

RICHARD W. MORRIS; MORRIS LAW
FIRM, PLLC,
                            *Appellants,*

                v.

JEAN-EMMANUEL RENOIR, an
individual; BESEDER INC., doing
business as Rima Fine Art; DROR
DAREL, husband; TRACY L.
PENWELL, wife,
                    *Defendants-Appellees.*

No. 07-17209

D.C. No.
CV-03-01310-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed December 9, 2008

Before: Mary M. Schroeder, Dorothy W. Nelson and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge D. W. Nelson

## COUNSEL

David Steiner and Michael Hambly, Steiner & Associates, PLC, Los Angeles, California, for defendant-appellant-plaintiff-cross-appellee Jean-Emmanuel Renoir.

Joshua Kaufman, Venable LLP, Washington, DC, for defendants-appellants-plaintiffs-cross-appellees Beseder Inc., Dror Darel, Tracy Penwell, and CSTPGU, LLC.

Richard Morris, Surprise, Arizona; Richard Stevens, Phoenix, Arizona, for plaintiff-appellee-defendant-cross-appellant Societe Civile Succession Richard Guino.

## OPINION

D.W. NELSON, Circuit Judge:

Beseder, Inc., Dror Darel, Tracy Penwell, and CSTPGU LLC (collectively "Beseder") and Jean-Emmanuel Renoir ("Renoir") appeal the district court's grant of summary judgment in favor of Societe Civile ("Societe") on Societe's copyright infringement claim. Societe and Renoir appeal other issues unrelated to the finding of copyright infringement which are discussed in an accompanying memorandum disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

French artist Pierre-Auguste Renoir and one of his assistants, Richard Guino, created the eleven sculptures at issue between 1913 and 1917 ("the sculptures"). The sculptures were first published in France no later than 1917 under Pierre-Auguste Renoir's name. There was no pre-1978 publication containing an American-style copyright notice.

In 1973, Guino obtained a determination by the French Supreme Court that he was a co-author to certain works of sculpture by Pierre-Auguste Renoir, including the sculptures at issue, and he was awarded a one-half interest in the Renoir-Guino sculptures.

In 1974, the sculptures were exhibited as Renoir-Guino works for sale at the Hotel Bristol in Paris.

In 1982, the Guino family and certain members of the Renoir family (not including appellant, Pierre-Auguste Renoir's great grandson, Renoir) entered into an agreement, providing that the Guino family would thereafter control production and reproduction of the sculptures using plaster casts from the originals. Under this agreement, the Guino family received exclusive rights to create subsequent editions. A trust (hereinafter "Societe") was formed to implement the Guino family's rights under the agreement.

In 1984, Societe obtained U.S. Copyright Office registrations for the sculptures, and in the registrations represented that the sculptures were either first published in England in 1983 or unpublished.

In 2003, Renoir sold some of the sculptures, or molds or castings thereof, to Beseder, who advertised and sold the sculptures and castings at its gallery in Scottsdale, Arizona.

On July 10, 2003, Societe filed its complaint against Beseder and Renoir (Renoir's mother, Hernandez, was added later as a defendant), alleging federal copyright infringement under 17 U.S.C. § 501 *et seq.* and false designation and false description of sponsorship in violation of the Lanham Act. Societe alleged that Renoir and Beseder (collectively, the "Defendants") engaged in sales, marketing, and reproduction activities in 2003 that infringed upon Societe's copyrights in the sculptures. Although Defendants disagree with some of Societe's characterizations, they generally admit that "if

Societe had legitimate, existing copyright interests under American law in the sculptures, then some of Renoir's and the Beseder Defendants' actions would constitute infringing acts."

In late 2003, both Beseder and Renoir answered the complaint, alleging that the sculptures were in the public domain.

In late 2004, Societe moved for partial summary judgment on liability of its copyright claims, but leaving open for trial the question of damages. Societe contended that if the sculptures had fallen into the public domain, they were nonetheless subject to restoration under 17 U.S.C. § 104A. Defendants opposed the motion and asserted cross-motions for partial summary judgment on Societe's copyright claims.

On January 30, 2006, the district court (after an initial September 2005 order, motions for reconsideration by Defendants, and an order granting reconsideration) entered partial summary judgment for Societe on its claim for copyright infringement and denied the Defendants' cross-motions for summary judgment. *Societe Civile Succession Richard Guino v. Beseder, Inc.*, 414 F. Supp. 2d 944, 952 (D. Ariz. 2006). The district court, relying on *Twin Books v. Walt Disney Co.*, 83 F.3d 1162 (9th Cir. 1996), held that the sculptures were not in the public domain because the publications were in a foreign country and without notice of the U.S. copyright. *Societe*, 414 F. Supp. 2d at 951. The district court, therefore, concluded that 17 U.S.C. § 303(a) of the 1976 Copyright Act applied because the sculptures were "created before January 1, 1978, but not theretofore in the public domain or copyrighted." *Id.* at 952. Under § 303(a), the sculptures were protected for seventy years after the death of the last surviving author. *Id.* Because Guino passed away in 1973, the sculptures were entitled to copyright protection until 2043. *Id.* The district court, however, was critical of both the reasoning of *Twin Books* and the "unreasonable result" it requires when applied

to a pre-1978 work that was published in a foreign country but not republished with a notice of copyright. *Id.* at 949-51.

On May 24, 2006, Judge Mary Murguia became the presiding judge in this case.

Defendants petitioned this court to allow an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This court denied the petition on May 26, 2006, without considering the merits.

The issues of copyright infringement damages, among other claims, were tried to a jury in October 2006. On November 2, 2006, a jury awarded $125,000 in damages to Societe on its copyright infringement claims against Defendants for ten of the eleven sculptures (the district court directed a verdict in favor of Defendants concerning one sculpture, Venus Victrix).

## STANDARD OF REVIEW

The court reviews "a district court's grant of summary judgment de novo." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003). Questions of law are reviewed de novo. *Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035, 1038 (9th Cir. 2006). "Whether a particular work is subject to copyright protection is a mixed question of fact and law subject to de novo review." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

## DISCUSSION

### I.   Copyright Protection of the Sculptures

Whether the sculptures are protected by copyright turns on analyses of both the 1909 and the 1976 Copyright Acts.

### a. Copyright Protection for works published/created prior to 1978

#### 1. 1909 Act

"Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was published or until it received protection under the federal copyright scheme." *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 952 (9th Cir. 1995), *superceded by statute on other grounds*, 17 U.S.C. § 303(b). When a work was published, it lost common law protection. *See id.* at 953. The owner could obtain federal protection for the published work by complying with the 1909 Act's requirements; otherwise, the work entered the public domain. *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000). Under § 9 of the 1909 Act, "[a]ny person . . . may secure copyright for his work by publication thereof with the notice of copyright required by this title."

The 1909 Act provided that an author was entitled to twenty-eight years of protection from the date he secured a copyright on a work, and that the copyright could, before the first twenty-eight-year period expired, be renewed for another twenty-eight-year term. *See Twin Books*, 84 F.3d at 1165.

#### 2. The 1976 Act

The Copyright Act of 1976 changed the basis of copyright protection from publication of a work to creation of a work. *See Eldred v. Ashcroft*, 537 U.S. 186, 195 (2003). That change applies to works "created on or after January 1, 1978." 17 U.S.C. § 302. In making that change, Congress also provided copyright protection terms for works created before 1978. Currently, copyright law protects four types of works: (1) works created on or after January 1, 1978, *id.* § 302; (2) works copyrighted as of January 1, 1978, *id.* § 304; (3) works "created before January 1, 1978, but not theretofore in the

public domain or copyrighted," *id.* § 303(a); and (4) foreign works not in the public domain in their country but in the public domain, for enumerated reasons, in the United States, *id.* § 104A.

Section 302 does not apply because the sculptures were created between 1913 and 1917. Neither does § 304, because the works were not copyrighted until 1984. Whether the sculptures are protected by §§ 303(a) or 104A turns on whether the sculptures passed into the public domain in the United States.

### b.    *Pre-1978 works and the public domain:* Twin Books

The copyright statute does not define the phrase "public domain." 17 U.S.C. § 101. Under the 1909 Copyright Act, a work enters the public domain when it is published in the United States without copyright protection. *ABKCO Music*, 217 F.3d at 688 ("When a work was published, it lost common law protection. . . . The owner could obtain federal protection for the published work by complying with the 1909 Act's requirements; otherwise, the work entered the public domain.").

Publication in a foreign country affects whether the work is published without copyright protection, and thereby affects whether the work is in the public domain in the U.S. In *Twin Books*, this court held "that publication without a copyright notice in a foreign country [does] not put the work in the public domain in the United States." 83 F.3d at 1167. In *Twin Books*, a book, *Bambi, A Life in the Woods*, was published in Germany in 1923 without copyright notice and then again published in 1926 in Germany *with* copyright notice. Copyright was registered in the U.S. in 1927 and renewed in 1954. *Id.* at 1164. Under the 1909 Act, copyright must be renewed within twenty-eight years of the commencement of copyright protection. *Id.* at 1165. Therefore, the 1954 renewal was timely if the copyright protection began with the 1926 publi-

cation, but not if protection began with the 1923 publication. *See id.* at 1168.

**[1]** Although the *Twin Books* court found that the public domain question was "heatedly debated," *id.* at 1166, the court held that "publication without a copyright notice in a foreign country did not put the work in the public domain in the United States." *Id.* at 1167. In support of its conclusion, the court cited Supreme Court decisions holding "that United States copyright law should not be given extraterritorial effect." *Id.* at 1166. The court also adopted the holding in *Heim v. Universal Pictures Co.*, 154 F.2d 480 (2d Cir. 1946), reading *Heim* to hold that "publication without a copyright notice in a foreign country did not put the work in the public domain in the United States." *Twin Books*, 83 F.3d at 1167.

**[2]** The court then addressed whether the 1923 publication without notice in Germany commenced the term of U.S. copyright protection. *Id.* The court looked to the language of the 1909 Act to reject "the proposition that publication abroad without notice of copyright secures protection under the 1909 Copyright Act." *Id.* at 1168. As a result, between 1923 and 1926, the book was neither in the public domain, nor protected by copyright. *Id.* at 1167. The court found that the copyright term commenced in 1926, when the book was republished in Germany with notice of copyright, and the 1954 renewal was timely. *Id.* at 1168.

  c. *Application of* Twin Books *to this case: were the sculptures in the public domain or protected by copyright?*

**[3]** Applying *Twin Books*, the sculptures in this case were not in the public domain. The sculptures were published in France as Renoir works in 1917. The sculptures were published as Renoir-Guino works in 1974, in an exhibition held in Paris. Neither party asserts that the sculptures were published with notice of U.S. copyright either in 1917 or 1974.

Because those publications were in a foreign country and without notice of United States copyright, they "did not put the work in the public domain in the United States." *Twin Books*, 83 F.3d at 1167.

**[4]** Furthermore, because the sculptures were never published with copyright notice, under *Twin Books*, the sculptures were not protected by copyright under the 1909 Act. *See id.* at 1168 (rejecting "the proposition that publication abroad without notice of copyright secures protection under the 1909 Copyright Act"). For the years between 1917 and 1978, therefore, the sculptures were neither protected by copyright nor injected into the public domain. *See id.* at 1167.

**[5]** An analysis under the 1976 Act is required to determine Societe's rights in the sculptures between 1978 and the time of its claim in 2003. The Copyright Restoration Act, 17 U.S.C. § 104A, permits restoration of copyright protection for foreign works that are not in the public domain in their home country but are in the public domain in the United States because of noncompliance with formalities imposed at any time by United States copyright law, including lack of proper notice. The sculptures would not be entitled to protection under this section because, pursuant to *Twin Books*, the sculptures have not passed into the public domain as required by § 104A(h)(6)(c) as they were published abroad without copyright notice. *See Twin Books*, 83 F.3d at 1167.

**[6]** Section 303(a) of the 1976 Act applies because the sculptures were "created before January 1, 1978, but not theretofore in the public domain or copyrighted." 17 U.S.C. § 303(a). The sculptures were created between 1913 and 1917. Pursuant to *Twin Books*, the sculptures have not passed into the public domain, 83 F.3d at 1167, and were not protected by copyright after foreign publication without notice, *see id.* at 1168. The sculptures were not copyrighted until 1984. Section 303(a) provides protection for the term provided by § 302, which is a term seventy years after the death

of the last surviving author. Because Guino passed away in 1973, the sculptures are entitled to protection until 2043, which the district court properly held.[1]

####   d.   *Can* Twin Books *be distinguished on a principled basis?*

Defendants offer three reasons for their contention that *Twin Books* is distinguishable and therefore should not apply. None is persuasive.

**[7]** First, Defendants argue that *Twin Books* should not apply here because there was no foreign publication with notice within a few years or while the 1909 Act was in effect. This distinction does not warrant a limited application of *Twin Books*. Nothing in *Twin Books* suggests that the republication of the work with notice was essential to its holding that foreign publication without notice did not trigger copyright protection. Indeed, the *Twin Books* court describes the very situation that this case raises: the status of the work after foreign publication without notice. "During [the years before publication with notice], anyone could have sold the *Bambi* book in the United States or made some derivative movie of the *Bambi* book." *Twin Books*, 83 F.3d at 1167. Although it is unclear how this status differs from the public domain, the *Twin Books* court clearly contemplated the status of works like the sculptures, which were between publication without notice and publication with notice. As such, *Twin Books*

---

[1]Although not pressed on appeal, it is worth noting that § 303(a) also provides that "if the work is published on or before December 31, 2002, the term of copyright shall not expire before December 31, 2047." Under the 1976 Act, the sculptures may have been published "before December 31, 2002," because they were distributed for public sale in 1917 and 1974. *See* 17 U.S.C. § 101 ("Publication" is defined as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership"). Although perhaps a minor distinction, the district court conducted no inquiry into whether the sculptures were published for purposes of the 1976 Act.

squarely controls the decision here and is binding precedent. *Cf. Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (stating that "a later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule").

Second, Defendants argue that *Twin Books* should not apply because of a possible conflict between certain *Twin Books* language and the copyright protection accorded to the sculptures. In *Twin Books*, the court stated:

> the clear language of section 10 of the 1909 Act provides that an author 'may secure copyright for his work by publication thereof with the notice of copyright required by this title.' There is absolutely no way to interpret that language to mean that an author may secure copyright protection for his work by publishing it without any notice of copyright.

83 F.3d at 1168. From this, Defendants conclude that *Twin Books* "does not stand for the proposition that works, which have never been published with a copyright notice, are protected by U.S. copyright law."

[8] The language at issue, however, is not inconsistent with the application of *Twin Books* in this case. The district court did not grant copyright protection to a work that had only been published abroad without copyright notice. Instead, the district court's holding was entirely consistent with *Twin Books* because it held that from 1917 to 1978 (before the 1976 Act granted protection), the sculptures were neither protected by copyright nor placed in the public domain. *Twin Books*, 83 F.3d at 1167 (noting that for years after publication without notice and before publication with notice, "anyone could have sold the [work] in the United States or made some derivative movie of the [work]"). The district court held only that copyright protection began in 1978, when § 303(a) of the 1976 Act granted a copyright term of seventy years after the death of

the last author (in this case Guino in 1973). *Societe*, 414 F. Supp. 2d at 952.

Third, Defendants argue that *Twin Books* should not be applied to this case because the sculptures were published before 1923, and the *Bambi* book was published in 1923. *Twin Books*, 83 F.3d at 1164. Thus, their argument goes, this court should hold that pre-1923 publications abroad without notice triggered copyright protection, while constraining the *Twin Books* holding that publication abroad without notice did not trigger copyright protection to only post-1923 publications.

**[9]** The year 1923 is significant because the 1976 Act, which became effective on January 1, 1978, and the 1998 Copyright Extension Act, operate together to create a bright line rule for which works are now in the public domain: works published before January 1, 1923, are generally in the public domain. Section 304(b) of the 1976 Act at its passage provided: "The duration of any copyright, the renewal term of which is subsisting at any time between December 31, 1976, and December 31, 1977, inclusive . . . is extended to endure for a term of seventy-five years from the date copyright was originally secured." However, a series of interim extensions passed before the 1976 Act extended a renewal term that would have expired between September 19, 1962, and December 31, 1976, to December 31, 1976. *See* Pub. L. 87-668, 76 Stat. 555 (1962); Pub. L. 89-142, 79 Stat. 581 (1965); Pub. L. 90-141, 81 Stat. 464 (1967); Pub. L. 90-416, 82 Stat. 397 (1968); Pub. L. 91-147, 83 Stat. 360 (1969); Pub. L. 91-555, 84 Stat. 1441 (1970); Pub. L. 92-170, 85 Stat. 490 (1971); Pub. L. 92-566, 86 Stat. 1181 (1972); Pub. L. 93-573, 88 Stat. 1873 (1974); 3-9 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.11[A], at pp. 9-148 to 9-149. Consequently, the 1976 Act grants works subject to the above interim extensions a nineteen-year extension of the renewal term from the time the twenty-eight year term would have expired, for a total of seventy-five years of protection. *See* 3-

9 *Nimmer on Copyright* § 9.11[A], at p. 9-149. And although the 1998 Sonny Bono Copyright Term Extension Act extended the copyright in all subsisting works for another twenty years, 17 U.S.C. § 304(b), it did not rescue any work from the public domain or recapture protection for that work, *see id.*; 3-9 Nimmer on Copyright § 9.11[B][1], at pp. 9-152 to 9-153. Thus, a work published before January 1, 1923, received, at most, protection for seventy-five years,**²** such that after December 31, 1997, any work published before January 1, 1923, was in the public domain. *See* United States Copyright Office, *How to Investigate the Copyright Status of a Work*, Circular 22, at 8 (2006) ("[T]he U.S. copyright in any work published or copyrighted prior to January 1, 1923, has expired by operation of law, and the work has permanently fallen into the public domain in the United States."); United States Copyright Office, *Extension of Copyright Terms*, Circular 15t, at 3 (2004) (same); 3-9A *Nimmer on Copyright*, § 9.04[A][1][b][iv], at p. 9A-26.3 ("Because protection for works first published anywhere in the world earlier than 1923 has since expired, those works are not subject to current U.S. protection . . . .").

Therefore, the argument goes, by the time of Defendants' alleged infringing activity in 2003, the sculptures had already entered the public domain in 1992, seventy-five years after the 1917 publication, and there could be no copyright infringement.

[10] This difference in the dates of publication, however, is not enough to distinguish *Twin Books* on a principled basis. The *Twin Books* court did not raise the significance of the 1923 date. Nor did it cite the 1976 Act or its effect on works

---

**²**Protection for works published before September 19, 1906, would have expired before Congress' interim extensions began in 1962, and thus receive, at maximum, two twenty-eight-year terms of protection. Pub. L. 87-668, 76 Stat. 555 (1962); 3-9 *Nimmer on Copyright* § 9.11[A], at pp. 9-149 to 9-150.

originally governed by the 1909 Act. The significance of the year 1923 in copyright is such that if the *Twin Books* court wanted to draw a distinction, it would have. The absence of such citations indicates that the *Twin Books* court did not intend to draw a line between works published before and after January 1, 1923. Whether the *Twin Books* court should have drawn a distinction is a matter more appropriately addressed en banc.

**[11]** Furthermore, if this court were to agree with Defendants and distinguish *Twin Books* from this case, the court would be creating questionable law just to contain another arguably questionable law. By following Defendants' argument, this court would create a rule that treats works published abroad without notice before 1923 differently from those published after 1923, by finding that the former's copyright term began with publication, while the latter's, per *Twin Books*, did not. *See* 83 F.3d at 1168. As explained above, it is true that, by operation of the 1976 and 1998 Acts, the copyright terms of a work published before 1923 and one published after 1923 may be different. But there is no basis to treat a work published abroad without notice in 1923 differently from one published in 1922 for purposes of when copyright protection *begins*.

Although the reasoning of *Twin Books* can be, and has been, criticized, it is still binding in this circuit. We are thus bound to follow it. *See Hart*, 266 F.3d at 1170 ("[A] later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule.").

## II.   The Constitutionality of *Twin Books*

Beseder argues, in the alternative, that application of *Twin Books* to this case violates the Constitution and *Eldred v. Ashcroft*, 537 U.S. 186 (2003), by creating a limitless term of U.S. Copyright for works published abroad. The Copyright

and Patent Clause of the Constitution states: "Congress shall have Power . . . [t]o promote the Progress of Science . . . by securing [to Authors] for limited Times . . . the exclusive Right to their . . . Writings." U.S. CONST. art. I, § 8, cl. 8. In *Eldred*, the Supreme Court upheld the constitutionality of the Copyright Term Extension Act because the extended term was finite and definable. 537 U.S. at 199-200 (a "limited Tim[e]" means "confine[d] with certain bounds," "re-strain[ed]," or "circumscribe[d]").

**[12]** Beseder argues, citing *Nimmer on Copyright*, that under the *Twin Books* rationale, a newly discovered ancient Greek work, "published obviously without notice a millennia ago," would not be in the public domain and would still be eligible for copyright protection, thus creating a limitless copyright term. *See* 1-4 *Nimmer on Copyright* § 4.01[C][1], at 4-10.1. While an ancient work may be protected today under the ruling of *Twin Books*, the term is not limitless. Instead, the copyright term for a newly discovered ancient work that is not in the public domain or copyrighted would be limited to a finite term of seventy years after the death of the last author, §§ 303(a), 302(a), (b), or December 31, 2047, whichever is later, § 303(a); *see also* 1-4 *Nimmer on Copyright* § 4.01[C][1], at 4-10.1 n.35.23; 3-9 *Nimmer on Copyright* § 9.09[A], at 9-133. Thus, *Twin Books* does not conflict with either the Copyright and Patent Clause of the Constitution or *Eldred*.

## *CONCLUSION*

For the foregoing reasons, we find that Defendants infringed Societe's copyrights in the sculptures. We therefore AFFIRM the district court's grant of summary judgment in favor of Societe on its copyright infringement claim.

AFFIRMED